IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **AUDRA MICHELE MORRIS,** | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. DLB-23-3026 |
| **BROOKE ROLLINS,** *Secretary, Department of Agriculture*, | * | |
| | * | |
| Defendant. | * | |

**MEMORANDUM OPINION**

Audra Michele Morris, who is proceeding without counsel, filed this action against the secretary of the U.S. Department of Agriculture ("USDA"), alleging that she was discriminated against based on her race and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C § 621 *et seq.*; and her disability in violation of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 *et seq.*[1] ECF 1. In response, the secretary filed a motion to dismiss or, alternatively, for summary judgment, arguing in part that the action should be dismissed as untimely because it was filed more than 90 days after Morris received notice of the USDA's final order implementing the Equal Employment Opportunity Commission ("EEOC") administrative law judge's ("ALJ") decision on her administrative discrimination complaint. ECF 11. Morris opposes the motion, ECF 13, and the secretary has filed a reply, ECF 14. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). For the reasons set forth below, the secretary's motion, treated as a motion for summary judgment, is granted.

---

[1] Brooke Rollins is automatically substituted as the defendant in place of Tom Vilsack pursuant to Fed. R. Civ. P. 25(d). The Clerk shall update the docket accordingly.

1

### I. Background

The following facts are from Morris's complaint and documents attached to the secretary's motion.

### A. Morris's Allegations

Morris is an African American woman who was born in 1968. ECF 1, at 4. In February 2019, she was diagnosed with morbid obesity and sleep apnea. *Id.* at 5. Due to her conditions, she has difficulty sleeping and struggles to bend, squat, run, and climb ladders or steps. *Id.*

On February 17, 2019, when she was 50 years old, Morris was hired as an auditor in the USDA's Office of the Inspector General, Eastern Region, in Beltsville, Maryland. *Id.* at 4. While employed with the USDA, Morris resided in Alexandria, Virginia, but her address of record on file with the agency was in Aubrey, Texas. *Id.* at 2.

On May 7, 2019, Brent Watson, who was then the assistant director of audit, threatened to terminate Morris's employment. *Id.* at 7. He repeated this threat "several times thereafter." *Id.* Morris does not say why Watson threatened to fire her.

Beginning in December 2019, Morris was supervised by Alejandra Cuellar, a senior auditor. *Id.* at 3. "[O]n an on-going and continuous basis," Cuellar "disproportionately and severely monitored and criticized [Morris's] work without valid reasons" and "set[] her up for failure." *Id.* at 5. On one occasion, Cuellar "rejected nearly everything [Morris] submitted and required her to rewrite the work papers until they contained exactly [Cuellar's] words, even when her grammar was incorrect." *Id.* On another occasion, Cuellar ordered Morris to "make multiple unnecessary revisions" in response to the comments of another senior auditor, even though Cuellar's and the other senior auditor's comments "were contradictory at times." *Id.* On another occasion, Cuellar gave Morris an assignment that Cuellar said would take "only a few hours" but then "kept adding

2

items to the assignment, pushing the deadline further down the road." *Id.* at 5–6. On another occasion, Cuellar gave Morris "point-by-point" instructions on how to make changes in a document, but then, after Morris followed those instructions, Cuellar sent Morris an email telling her that the changes were incorrect. *Id.* at 6. Cuellar copied Watson, who was now director of audit, on this email. *Id.* Cuellar frequently gave Morris negative comments "without providing specific guidance or direction," and unlike other auditors, Morris was required to work in Teammate, a document-editing software that "frequently goes offline and loses or deletes documents." *Id.* When Cuellar's unit "fail[ed]," Morris was blamed. *Id.*

When the Covid-19 pandemic began in March 2020, Morris was required to work from home. *Id.* at 4. That same month, Morris was promoted to the General Schedule ("GS")-11 paygrade.[2] *Id.* In October 2020, Morris received her annual performance evaluation, which rated her as "fully successful." *Id.*

On February 16, 2021, Watson told Morris that, upon completion of her year of employment at GS-11, she would not be automatically promoted to the next paygrade, GS-12. *Id.* at 7. Despite her favorable performance evaluation in October 2020, Watson told Morris that her performance needed improvement. *Id.* Morris had "never [previously been] given any warning or indication that her performance needed improvement." *Id.* In February or March 2021, Eric Hermosillo, an assistant director, "failed to promote [Morris] to GS-12" even though "she met all requirements to be so promoted automatically." *Id.*

---

[2] "The General Schedule (GS) payscale is the federal government payscale used to determine the salaries of over 70% of federal civilian employees. An employee's base pay depends on two factors[—]the GS Paygrade of their job, and the Paygrade Step they have achieved (depending on seniority or performance)." *General Schedule (GS) Payscale Table for 2024*, FederalPay.org, https://www.federalpay.org/gs/2024 (last visited Oct. 29, 2025) (emphasis omitted).

In April 2021, Morris received her mid-year performance evaluation, in which Hermosillo rated her as "fully successful." *Id.* at 4.

Beginning in June 2021, Hermosillo required Morris to meet with him every two weeks to discuss her performance and to send him an email summarizing their meetings afterward. *Id.* at 7–8. These meetings continued until August 2021. *Id.*

Three other auditors "under the purview of" Watson and Hermosillo—Ngozi Osei, Hector Alvarez, and Abdullah Moin—were timely and automatically promoted to GS-12 after working at GS-11 for a year, without being required to meet with their supervisors biweekly. All three of these auditors were younger than 40, none was African American, and none had a "known disability." *Id.* at 8.

Morris "made her initial contact" with the USDA's Office of Diversity and Conflict Resolution on June 21, 2021 and "filed an amended informal complaint" on July 23, 2021. *Id.*

Sometime between July 2021 and September 2021, Morris requested that she be allowed to work from home on a permanent basis, and that her duty station be changed to Texas. *Id.* at 6–7. Her request was denied. *Id.* Cuellar was allowed to work from home permanently, and "[o]ther [a]uditors' request[s] for change of duty station to [their] respective home[s] of record [were] automatically granted[,] conditioned upon completion of [two] years of employment with [a] 'fully successful' rating." *Id.* at 7.

On September 11, 2021, Morris laterally transferred to a position with the U.S. Department of Homeland Security in Frisco, Texas. *Id.* at 4. At the time of her transfer, she was still within the GS-11 paygrade. *Id.*

The informal complaint that Morris had filed in July 2021 was "delayed and deferred" until February 8, 2022. *Id.* at 8. On March 21, 2022, Morris "filed a formal EEO complaint[.]" *Id.* at 9.

4

**B. Procedural History**

Morris's case was eventually adjudicated by an EEOC ALJ. Before the EEOC, Morris alleged that she had been discriminated against on the basis of her race, sex, age, and physical disability when she was denied promotion to GS-12, required to meet with her supervisor every two weeks, and denied the option to telework permanently. ECF 11-2, at 4–5. The ALJ granted summary judgment to the USDA. *Id.* at 9. The ALJ concluded that "there [was] no evidence . . . that the alleged incidents had a nexus to [Morris's] race, sex, age, or disability . . . [or] that the [USDA's] proffered reasons for its actions were mere pretext" and further determined that "the incidents described were not sufficiently severe or pervasive to rise to the level of a hostile work environment." *Id.*

The ALJ issued his decision on July 21, 2023, and it was served on Morris the same day. *Id.* at 4, 10. On July 28, 2023, the USDA issued a final order "fully implement[ing]" the ALJ's decision. ECF 11-3, at 2. The final order was served on Morris via email on July 31, 2023. *Id.* at 6. Attached to the final order was a notice explaining Morris's right to appeal the final order to the EEOC as well as her right to file a civil action in federal district court. *Id.* at 3–5. The notice instructed Morris that if she wished to file an action in federal court, she had to do so within 90 days of receiving the final order (if no appeal was filed), within 90 days of receiving the EEOC's final decision on appeal, or after 180 days from when she filed an appeal with the EEOC if she had not received a final decision from the EEOC within that time frame. *Id.* at 4. There is no indication in the record or briefing that Morris filed an administrative appeal after being served with the final order.

On November 7, 2023, Morris filed suit in this Court. She states that the "disparate treatment[] and hostile work environment" she endured have caused her to gain weight; suffer

5

from high blood pressure, migraine headaches, panic attacks, and adrenaline surges; and feel "trapped and suffocated." ECF 1, at 9. She further alleges that her career advancement was delayed and that she "los[t] . . . enjoyment of life." *Id.* She seeks injunctive relief, in the form of retroactive promotion to GS-12, as well as monetary damages totaling $328,039. *Id.*

## II.     Standard of Review

The secretary moves to dismiss the complaint for failure to state a claim or, alternatively, for summary judgment. The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015). When the parties present and the court considers matters outside the pleadings on a Rule 12(b)(6) motion, the court must treat the motion as one for summary judgment under Rule 56, and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Morris received sufficient notice that the secretary's motion could be treated as one for summary judgment. The Court sent Morris a notice advising her of this possibility and informing her that the secretary's motion could result in the entry of judgment against her. ECF 12. Moreover, the secretary's motion, which identifies summary judgment as possible relief, provided sufficient notice for Morris to have a reasonable opportunity to present relevant evidence in support of her position. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Indeed, Morris filed evidence in support of her opposition to the secretary's motion. Thus, the Court is satisfied that Morris has been advised that the secretary's motion could be

6

treated as one for summary judgment and that she has been given a reasonable opportunity to present materials in response to the motion. The Court will resolve the motion under Rule 56.

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" in support of its position. Fed. R. Civ. P. 56(c)(1)(A). Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial." *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment. *Id.* at 252. The court "should not weigh the evidence." *Perkins*, 936 F.3d at 205 (citing *Anderson*, 477 U.S. at 249). However, if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," then summary judgment is proper. *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). In ruling on a motion for summary judgment, the court "view[s] the facts and inferences drawn from the facts in the light most favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).[3]

---

[3] In her opposition, Morris argues that the secretary is not entitled to summary judgment because "the record is not complete" and the "parties are yet to be authorized to engage in discovery." ECF 13, at 4. When a party seeks to defeat summary judgment because the record is incomplete, they

7

**III.    Discussion**

The secretary argues that Morris's action is time-barred because it was filed more than 90 days after Morris received the USDA's final order. Morris concedes that the action was untimely filed but argues that she is entitled to equitable tolling.

A federal employee alleging discrimination in violation of Title VII, the ADEA, or the Rehabilitation Act must file an action in federal court "[w]ithin 90 days of receipt of the agency final action on an individual . . . complaint" if the agency action is not appealed to the EEOC. *See* 29 C.F.R § 1614.407(a); *see also* 42 U.S.C. § 2000e-16(c) (Title VII); 29 U.S.C. § 626(e) (ADEA); 29 U.S.C. § 794a(a)(1) (Rehabilitation Act).

Morris was served with the USDA's final order on July 31, 2023. Ninety days from that date was October 29, 2023. Because October 29, 2023 fell on a Sunday, Morris was required to file her complaint by the following Monday, October 30. *See* Fed. R. Civ. P. 6(a)(1)(C). She did

---

may file a Rule 56(d) affidavit detailing the specific facts that are yet to be discovered and are necessary to defeat summary judgment. *See Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008). Rule 56(d) motions are "broadly favored and should be liberally granted" in order to protect non-moving parties from premature summary judgment motions. *See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & City Council of Baltimore*, 721 F.3d 264, 281 (4th Cir. 2013) (en banc) (quoting *Raby v. Livingston*, 600 F.3d 552, 561 (5th Cir. 2010)). Even so, to justify a denial of summary judgment on the ground that additional discovery is necessary, the facts identified in the Rule 56(d) affidavit must be "essential to . . . [the] opposition." *See* Fed. R. Civ. P. 56(d). A Rule 56(d) request for additional discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." *See Strag v. Bd. of Trs., Craven Cmty. Coll.*, 55 F.3d 943, 954 (4th Cir. 1995). Morris has not filed a Rule 56(d) declaration. But even if the Court were to construe her opposition as a Rule 56(d) request in light of her self-represented status, *see, e.g.*, *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021), the Court would not defer summary judgment to allow for discovery because Morris fails to identify any discovery she needs to respond to the secretary's motion, *see, e.g.*, *Escobar-Salmeron v. Moyer*, 150 F.4th 360, 372 (4th Cir. 2025) (affirming grant of summary judgment despite self-represented party's Rule 56(d) declaration, where declaration "contained only '[v]ague assertions as to matters upon which the district court should have allowed discovery'") (quoting *Nguyen v. CNA Corp.*, 44 F.3d 234, 242 (4th Cir. 1995)).

not. She filed her complaint on November 7, 2023—eight days later. Thus, as Morris correctly concedes, this action is untimely.

That Morris filed suit after the 90-day period does not automatically doom her Title VII, ADEA, and Rehabilitation Act claims because the time limit for filing suit under these statutes is not jurisdictional. *See, e.g.*, *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) (Title VII); *Baldree v. Vallen Distrib., Inc.*, No. 3:20-cv-00467-MOC-DCK, 2020 WL 6875156, at *4 (W.D.N.C. Nov. 23, 2020) (ADEA); *McGuffin v. Colvin*, No. 5:16-CV-467-D, 2017 WL 52579, at *3 (E.D.N.C. Jan. 3, 2017) (Rehabilitation Act), *aff'd sub nom. McGuffin v. Berryhill*, 697 F. App'x 247 (4th Cir. 2017). It is, rather, akin to a statute of limitations and thus "is subject to waiver, estoppel, and equitable tolling." *Zipes*, 455 U.S. at 393; *see also Laber v. Harvey*, 438 F.3d 404, 429 n.25 (4th Cir. 2006) (en banc). Morris argues that equitable tolling applies. As the party seeking equitable tolling, Morris bears the burden of showing that she is entitled to it. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005).

Equitable tolling is appropriate when a plaintiff shows "(1) that [they have] been pursuing [their] rights diligently, and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 551 (4th Cir. 2019) (quoting *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 255 (2016)).[4] The court should apply equitable tolling only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against

---

[4] As the Fourth Circuit recognized in *Edmonson*, two other equitable doctrines—fraudulent concealment and equitable estoppel—allow a court to toll a statute of limitations where the defendant has engaged in a "wrongful . . . effort . . . to prevent the plaintiff from suing." *Edmonson*, 922 F.3d at 549 (quoting *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990)). Neither of these doctrines is relevant here because Morris does not argue that the secretary prevented her from filing this lawsuit.

the party and gross injustice would result." *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000). The court must be mindful that "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984) (per curiam). And the court "must be guarded and infrequent" in its application of equitable tolling, "lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (quoting *Harris*, 209 F.3d at 330).

Morris does not argue she has been pursuing her rights diligently, but the Court will assume she has for purposes of this analysis. Instead, Morris argues that her family caretaking responsibilities and her sleep apnea are extraordinary circumstances that justify equitable tolling. Specifically, Morris states that, since 2018, she has been the "caretaker and sole provider" for her mother, who has previously had a stroke and suffers from several other conditions, including diabetes and hypertension. ECF 13, at 2. Morris explains that she also serves as the "caretaker and legal guardian" of her adult son, who is autistic, has an IQ of 69, suffers from epilepsy, and "requires . . . constant monitoring for any sign of seizure." *Id.* Morris further states that in September 2023, her mother developed complications from a Covid-19 infection and was "hospitalized for over a month," and that the following month, her mother was diagnosed with pancreatic cancer. *Id.* During this period, her son's seizures also grew "increasingly frequent," and he was hospitalized between November 3 and 5, 2023. *Id.* She argues that her "overwhelming" caretaking duties grew "even more stressing" during the period when her complaint was due to be filed, and that these external pressures, coupled with her sleep apnea, are grounds for equitable tolling. *Id.*

In support of her position, Morris has submitted a letter from her mother's primary care provider, Megan Sloan, dated November 21, 2023, verifying that Morris's mother has "multiple health issues including stroke, diabetes, hypertension, weakness, open wound to toe, and history of falls which limit her functional abilities." ECF 13-1, at 1. Sloan further states that Morris's mother "has been receiving in home care" due to her "limitations" "and requires her daughter for assistance with care and treatments." *Id.* Morris also has submitted a letter from an oral and maxillofacial surgeon, dated November 3, 2023, requesting that her son be excused from "work/school" on that date because he was "seen for an appointment at our office" and stating that her son should be "free to return to work/school" on November 6, 2023 with no restrictions. *Id.* at 2.

Morris also relies on an affidavit she filed in November 2024, ECF 6, in response to an order to show cause why she had not timely effected service of process. In the affidavit, Morris stated that she had been with her mother in the hospital "all of this week including today, November 21, 2024." *Id.* at 2. She stated that she has been her mother's "caretaker and sole provider" since 2018 and that her mother lived with her until May 2024 but now "receiv[es] full-time nursing care in a continual care facility." *Id.* at 2–3. She further stated that her mother was hospitalized with Covid-19 and pneumonia in September 2023 and was diagnosed with a pancreatic mass the following month. *Id.* at 2. She added that she has power of attorney for her mother and "accompan[ies] her to every medical appointment." *Id.* at 3. She also described her son's epilepsy and intellectual disabilities and stated that although her son has "been a great help to me in the physical care of my mother," his seizures worsened during the two years before she filed the affidavit, and as of the time she filed the affidavit, he required constant monitoring. *Id.* She stated: "[T]he overwhelming amount of caretaker responsibilities that I have been managing

11

over the past year has affected my ability to manage everything as efficiently and competently as I was able to do in earlier years." *Id.* at 4.

The Court is sympathetic to Morris's situation. Caring for not one but two chronically ill family members is demanding, time-consuming, and exhausting. The Court has no doubt that Morris's responsibilities cause her to feel stressed and overwhelmed. Nevertheless, Morris has not met her burden of showing that she is entitled to equitable tolling. Morris has not sufficiently shown that her caretaking responsibilities made it impossible for her to file her complaint on time. Although the Court is mindful that Morris's mother was hospitalized and received a life-altering diagnosis during the limitations period, Morris does not explain what her caretaking duties were when her mother was under the care of hospital staff or how those duties prevented her from preparing and filing this action. Nor can the Court conclude that Morris's son's hospitalization justifies equitable tolling, because that occurred on November 3, 2023—after the filing deadline had passed. Morris's general statements that she has been her mother's "caretaker and sole provider" and that her son's seizures require constant monitoring also are insufficient. Certainly, Morris's family responsibilities demand her time, but she has not provided any specific facts that illuminate why those responsibilities rendered her completely unable to file her complaint during the 90-day limitations period. *See, e.g.*, *Boudouin v. Mabus*, Civ. No. 2:10cv109, 2010 WL 11561528, at *5 (E.D. Va. Oct. 13, 2010) (declining to apply equitable tolling to untimely administrative complaint where, although plaintiff stated that he had been providing full-time care for his ill mother following her release from the hospital, he "fail[ed] to explain his role in caring for his mother and/or how such role prevented him from making any contact with a Navy representative" or "why he was unable to contact an [Equal Employment Opportunity] counselor during the weeks his mother was still in the hospital, or why he was precluded from doing the

same after his mother was released from the hospital") (footnote omitted); *Blakes v. Gruenberg*, Case No. 1:14-cv-1652-GBL/IDD, 2015 WL 9274919, at *7 (E.D. Va. Dec. 18, 2015) (attorney's need to care for sister following a "life-threatening medical emergency" did not merit equitable tolling in part because plaintiff and attorney did not "explain *how* [p]laintiff's attorney taking care of his sister was so debilitating that this [c]omplaint could not be timely filed").

Morris's claim that her sleep apnea warrants equitable tolling also fails for two independent reasons. First, Morris cites to nothing in the record, other than her unverified complaint—which is not evidence—to support her assertion that she suffers from sleep apnea. Second, even if Morris had submitted medical records to corroborate her diagnosis, Morris does not explain how her condition prevented her from meeting the filing deadline. *See, e.g.*, *Rouse v. Lee*, 339 F.3d 238, 248 (4th Cir. 2003) (en banc) (rejecting habeas petitioner's argument that his medical condition warranted equitable tolling because he "simply provides no reason why his medical condition barred him from filing his habeas petition at least one day earlier").

Having considered Morris's arguments and the evidence she submitted, the Court finds that Morris has not established that "some extraordinary circumstance stood in [her] way and prevented timely filing." *See Edmonson*, 922 F.3d at 551 (quoting *Menominee*, 577 U.S. at 255). The "rare instances" reserved for equitable tolling, *Harris*, 209 F.3d at 330, include cases where a claimant suffers from "profound mental incapacity," *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004), where they live under a regime that deprives them of a judicial remedy, *Warfaa v. Ali*, 1 F.4th 289, 294–95 (4th Cir. 2021), or where their "attorney engages in 'serious misconduct' such as 'ma[king] misrepresentations to the [plaintiff], disregard[ing] the [plaintiff's] instructions, refus[ing] to return documents, or abandon[ing] the [plaintiff's] case," *Edmonson*, 922 F.3d at 549 (alterations in *Edmonson*) (quoting *Downs v. McNeil*, 520 F.3d 1311, 1321–22 (11th Cir. 2008)).

Morris has not identified similar circumstances that would make it "unconscionable to enforce the limitation period against [her]." *See Harris*, 209 F.3d at 330.

Because Morris's complaint is untimely and equitable tolling is not warranted, the secretary is entitled to summary judgment on Morris's Title VII, ADEA, and Rehabilitation Act claims.

### IV.   Conclusion

The secretary's motion to dismiss or, alternatively, for summary judgment, treated as a motion for summary judgment, is granted. A separate Order follows.

Date: October 30, 2025

Deborah L. Boardman
United States District Judge